UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DERIEL HEAD,

      Plaintiff,

v.                            Case No. 3:22-cv-279-MMH-PDB

C.D. BERNARD, et al.,

      Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Deriel Head, a former inmate of the Florida Department of Corrections (FDOC),[1] initiated this action on March 14, 2022, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[2] under 42 U.S.C. § 1983. He proceeds on an Amended Complaint (AC; Doc. 17) with attachments (Doc. 17-1). In the AC, Head names the following Defendants: (1) Officer C.D. Bernard; (2) Officer J. Smith; (3) Officer S. Stevenson; (4) Officer C.D. Dinkins; and (5) Sergeant J.J. Lloyd. He alleges that Defendants, employees of the Jacksonville

_____

[1] The Florida Department of Corrections' website shows Head was released from custody on February 1, 2023. See Offender Search, Florida Department of Corrections, (last visited July 20, 2023).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Sheriff's Office, violated his Fourth and Fourteenth Amendment rights during a traffic stop on September 8, 2021. AC at 5; Doc. 17-1 at 1. Head requests declaratory and injunctive relief, as well as monetary damages. AC at 7. This matter is before the Court on Defendants' Motion to Dismiss (Motion; Doc. 19). Head filed a response in opposition to the Motion. <u>See</u> Response (Doc. 20). The Motion is ripe for review.

## II. Plaintiff's Allegations[3]

Head argues that Defendants stopped and searched his vehicle without probable cause in violation of his rights under the Fourth and Fourteenth Amendments. AC at 5. He further contends that Defendants' illegal stop resulted in his false arrest and imprisonment. <u>Id.</u>; Doc. 17-1 at 1. As to the specific facts underlying his claims, Head asserts that on September 8, 2021, at 10:48 p.m., Officer Bernard conducted a traffic stop of Head's vehicle

---

[3] In considering the Motion, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to Head, and accept all reasonable inferences that can be drawn from such allegations. <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003); <u>Jackson v. Okaloosa Cnty.</u>, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the AC, and may well differ from those that ultimately can be proved.

2

because it had an inoperable passenger side taillight.[4] AC at 5-6. Head was the driver and registered owner of the vehicle. Id. at 6. According to Head, he and his passenger, April Borden, provided their driver's licenses to Officer Bernard. Id. Officer Bernard conducted criminal history checks, which revealed that Borden had "a history of drug arrest." Id. Head alleges that Officer Bernard then asked twice for permission to search Head's vehicle. Id.; Doc. 17-1 at 5. Head declined and asked, "what[']s your probable cause." AC at 6. According to Head, Officer Bernard responded with "a threat of force" and requested a narcotics K9 unit. Id.; Doc. 17-1 at 5.

Head alleges that "while [Officer Bernard] was conducting [] [the] traffic stop investigation," K9 Officer Stevenson arrived at the scene. AC at 6. Head and Borden were asked to step out of the vehicle, so Officer Stevenson could conduct a K9 drug sniff. Id.; Doc. 17-1 at 4. When Borden stepped out of Head's vehicle, "a clear glass pipe with burnt drug residue fell out of [her] clothing." Doc. 17-1 at 4. Upon seeing the paraphernalia, Officer Bernard detained Head

---

[4] In the AC, Head largely duplicates Officer Bernard's written statements from the arrest and booking report, which Head attaches as an exhibit to the AC, and alternates between a first-person perspective as Officer Bernard and a third-person perspective. For example, he states that "Officer C.D. Bernard . . . say[s] he observed Plaintiff's vehicle travelling southbound with the rear passenger taillight inoperable. I activated my emergency equipment and conducted a traffic stop. I made contact with the suspect (Deriel Head) Plaintiff who is the driver and registered owner of the vehicle." AC at 6.

and Borden in the back of his patrol vehicle. Id. While Officer Bernard searched the vehicle for additional drug materials, he found a "white rock substance that appeared to be crack cocaine" in Head's wallet. Id. Officer Smith searched the center console of the vehicle and found another "white rock substance." Id. The substances field tested positive for crack cocaine. Id. Officer Bernard then advised Head of his Miranda[5] rights, and Head stated, "there was no crack rock in his wallet or in his vehicle." Id. at 4. He alleges that the "incident" occurred at 10:48 p.m.; Officer Bernard wrote a traffic citation at 11:02 p.m. and arrested Head at 11:30 p.m. Id. at 4-5. Head asserts that Officer Dinkins "approved and searched [the] vehicle," while Sergeant Lloyd "was notified of the vehicle [to] be forfeited." Id.

The exhibits attached to the AC reflect that on September 21, 2021, the State of Florida (State) charged Head with possession of cocaine in violation of section 893.13(6)(a), Florida Statutes (2021). Id. at 14. The State entered a nolle prosequi of Head's case on October 21, 2021. Id. at 16.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S.

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that

5

"conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

6

## IV. Summary of the Arguments

In their Motion, Defendants argue that Head's claims against them should be dismissed because: (1) Officer Bernard had probable cause to stop and arrest Head; (2) Head fails to state a claim upon which relief can be granted against Sergeant Lloyd, Officer Stevenson, and Officer Dinkins; (3) Defendants are entitled to qualified immunity; and (4) the AC is a shotgun pleading. <u>See</u> Motion at 7-24. In response, Head asserts that Defendants detained him without probable cause, and as a result, they falsely arrested and imprisoned him. <u>See</u> Response at 2-28.

## V. Applicable Law

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law." <u>See</u> <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001). Head alleges that Defendants are liable under § 1983 because they violated the Fourth and Fourteenth Amendments. AC at 5; Doc. 17-1 at 1. Initially, the Court finds that while the AC references the Fourteenth Amendment, Head has not "laid out the elements and stated a claim under that amendment." <u>Signature Pharmacy, Inc. v. P. David Soares</u>, No. 6:08-cv-

1853-Orl-31GJK, 2012 WL 1631681, at *2 (M.D. Fla. May 8, 2012).[6] Moreover, like the Plaintiff in <u>Signature Pharmacy</u>, "it does not appear that [Head] could have proceeded under the Fourteenth Amendment even if [ ]he[ ] had wished to do so." <u>Id.</u>

> Clearly, the gravamen of the Amended Complaint was the allegedly improper . . . seizures for which the Defendants were responsible. The right to be free from unreasonable searches and seizures is protected by the Fourth Amendment, rather than the Fourteenth, and where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process found in the Fourteenth Amendment, must be the guide for analyzing the claim. <u>Albright v. Oliver</u>, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed.2d 114 (1994). Thus, as to the allegations made in the Amended Complaint, a Fourteenth Amendment claim would have been improper.

<u>Id.</u> The case before the Court here is no different. Accordingly, to the extent that Head raises an independent Fourteenth Amendment claim, the Motion is due to be granted.

---

[6] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

## VI. Probable Cause Bars Head's Fourth Amendment Claims

In their Motion, Defendants argue that Head's claims fail because the AC establishes, on its face, "probable cause for the vehicle stop, the reason and reasonableness for the detention, and probable cause for both the warrantless search of the vehicle and [Head's] arrest." Motion at 14-15. A search or "[a]n arrest without a warrant and lacking probable cause violates the [Fourth Amendment] and can underpin a § 1983 claim . . . ." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010); see also Jones v. Brown, 649 F. App'x 889, 890 (11th Cir. 2016).[7] The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. A traffic stop constitutes a seizure for Fourth Amendment purposes. Brendlin v. California, 551 U.S. 249, 255 (2007).

---

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

However, the inquiry is not simply whether a suspect has been seized, but whether the seizure was unreasonable. Beshers v. Harrison, 495 F.3d 1260, 1266 (11th Cir. 2007). A traffic stop is reasonable if it is based upon probable cause or supported by reasonable suspicion in accordance with Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008). The Court notes that "an officer's motive in making the traffic stop does not invalidate what is otherwise 'objectively justifiable behavior under the Fourth Amendment.'" United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999) (quoting Whren v. United States, 517 U.S. 806, 812 (1996)); see also Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (quoting Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1119 n.4 (11th Cir. 1992)) ("Quite simply, '[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.'").

Probable cause exists if an arrest is objectively reasonable in view of the totality of the circumstances. Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003) (quoting Lee, 284 F.3d at 1195). The Eleventh Circuit has explained that "probable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" Washington

10

v. Howard, 25 F.4th 891, 898-99 (11th Cir. 2022) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018)) (original alteration omitted). In determining the existence of probable cause, a court must "'ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity.'" Id. at 902 (quoting Wesby, 138 S. Ct. at 588) (alteration in original).[8] Notably, "[t]he existence of probable cause bars a Fourth Amendment false-arrest claim." Crocker v. Beatty, 995 F.3d 1232, 1243 (11th Cir. 2021).

"Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Bradley v. Benton, 10 F.4th 1232, 1239 (11th Cir. 2021) (quotation, citation, and original alteration omitted). Nevertheless, "it requires 'a minimal level of objective justification for making the stop.'" Id. (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Reasonable suspicion exists "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Navarette v. California, 572

---

[8] In Washington, the Eleventh Circuit rejected an older standard that required "'facts and circumstances . . . [that] would cause a prudent person to believe . . . that the suspect has committed, is committing, or is about to commit an offense.'" 25 F.4th at 899, 902 (second and third alterations in original) (quoting Hardigree v. Lofton, 992 F.3d 1216, 1230 (11th Cir. 2021)).

U.S. 393, 396 (2014) (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981)). "Criminal activity includes even minor traffic violations." <u>United States v. Campbell</u>, 912 F.3d 1340, 1349 (11th Cir. 2019) (citing <u>United States v. Chanthasouxat</u>, 342 F.3d 1271, 1277 (11th Cir. 2003)). Similar to probable cause, determining whether reasonable suspicion existed in a given case depends on the totality of the circumstances. <u>Navarette</u>, 572 U.S. at 397. More than a mere "hunch" is required to create reasonable suspicion, but as noted above, "the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." <u>Id.</u> (quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989)).

### A. Traffic Stop

Defendants argue that Officer Bernard had probable cause to stop Head's vehicle because it had an inoperable taillight. Motion at 10. According to Defendants, once an officer has validly detained a driver, he may conduct "'a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants.'" <u>Id.</u> at 11 (quoting <u>Simmons</u>, 172 F.3d at 778 (emphasis omitted)). They contend that the traffic offense and the

ordinary inquiries incident to a stop for such an offense justified the duration of the detention in this case. Id. at 13. Moreover, Defendants assert that although an officer may not continue to detain a driver after he has completed a valid traffic stop solely to await the arrival of a K9 unit, Head fails to allege that occurred here. Id. at 11.

Head responds that Officer Bernard did not have probable cause to conduct a traffic stop. Response at 9. He contends that Officer Bernard never determined whether his vehicle was unsafe to operate, a requirement to demonstrate a violation of Florida Statutes section 316.610(1), which Head argues should be read in conjunction with Florida Statutes section 316.221(1). Id. at 11-12. Head maintains that the vehicle's taillights "displayed red lights from both side[s] that emit [] 1000 feet from the rear." Id. at 11. Therefore, he asserts that he did not commit a traffic violation. Id. According to Head, Officer Bernard also impermissibly prolonged the stop when he diverted away from its initial purpose to investigate another crime without reasonable suspicion. Id. at 6.

The Court initially notes that it is unclear why Head cites to section 316.610 as Officer Bernard did not stop him or issue him a citation for a violation of that statutory section. See AC at 6; Doc. 17-1 at 12. Officer Bernard

instead stopped Head because his vehicle had an inoperable taillight in violation of section 316.221(1). AC at 6; Doc. 17-1 at 8. To support his argument, Head cites Paul v. State, 991 So. 2d 404 (Fla. 2d DCA 2008). Response at 11. However, section 316.610, not section 316.221(1), provided the basis for stopping the driver in Paul. 991 So. 2d at 405. As such, the facts of that case are inapposite, and the Court declines to apply section 316.221(1) in the manner that Head suggests.

Here, the Court finds that the facts as pled by Head establish that Officer Bernard had a legal basis to conduct a traffic stop for an inoperable taillight. Driving at night without at least two lit taillights is a violation of Florida law. See §§ 316.217(1)(a), 316.221(1), Fla. Stat. (2021). According to the AC and the arrest and booking report, Officer Bernard observed Head's vehicle "travelling southbound with the rear passenger taillight inoperable" at 10:48 p.m. AC at 5-6; Doc. 17-1 at 8. Therefore, Officer Bernard had probable cause to support a traffic stop of Head's vehicle for an inoperable taillight.

Importantly, in the AC, Head does not even attempt to allege that the passenger taillight of his vehicle was operable, contrary to Officer Bernard's observation. See generally AC; Doc. 17-1. While he appears to make such an allegation in response to the Defendants' Motion, he may not amend his AC in

14

a response to a motion to dismiss, see Fed. R. Civ. P. 7(b); Huls v. Llabona, 437

F. App'x 830, 832 n.5 (11th Cir. 2011) (noting that a plaintiff cannot raise new

arguments in a response to a motion to dismiss and instead must seek leave to

amend his complaint); Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959

(11th Cir. 2009) (finding that the district court properly refused to consider

contracts referred to in a response to a motion to dismiss which were not

mentioned in the amended complaint). Further, to the extent Head contends

in his Response that Officer Bernard used the inoperable taillight as a pretext

to stop Head's vehicle and search it for evidence of another crime, the

subjective motivation of Officer Bernard is immaterial to the Court's analysis.

See Bradley, 10 F.4th at 1239 (noting that the officer's subjective purpose for

conducting a stop is immaterial, "[the court] need only consider whether, given

the totality of the circumstances, an objective and particularized basis for the

stop existed"). The facts as pled in the AC demonstrate that Officer Bernard

had probable cause to stop Head's vehicle for a violation of Florida law.

Accordingly, Defendants' Motion is due to be granted on this basis.

Turning to whether the stop was unreasonably prolonged, the Court

notes that "[u]nder Terry v. Ohio, an officer's investigation of a traffic stop

must be 'reasonably related in scope to the circumstances which justified the

interference in the first place.'" <u>United States v. Boyce</u>, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting <u>Terry</u>, 392 U.S. at 20). For this reason, <u>Terry</u> stops must be of a limited duration and "[t]he stop 'may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity.'" <u>Id.</u> (citing <u>United States v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cir. 2001)).

Head's timeline of the stop is identical to the facts outlined in the arrest and booking report and traffic citation. In his affidavit, Officer Bernard states that at 10:48 p.m., he observed Head's vehicle with an inoperable taillight, activated his emergency equipment, and conducted a traffic stop. Doc. 17-1 at 8; <u>see</u> AC at 5-6. In the report, Officer Bernard lists Head's time of arrest as 11:30 p.m. Doc. 17-1 at 4, 7. According to both Head and the information on the traffic citation, Officer Bernard wrote the citation at 11:02 p.m. Doc. 17-1 at 5, 12. Head does not identify any other times in the AC and asserts only his conclusory statement that Defendants "prolonged [the] traffic stop." AC at 5.

Based on Head's factual allegations, the time between Officer Bernard initiating the stop and arresting Head amounted to forty-two minutes. During that time, Officer Bernard made contact with Head and Borden, obtained their driver's licenses, conducted criminal history checks, and wrote the traffic

16

citation. Id. at 6; Doc. 17-1 at 5. Even drawing all inferences in Head's favor, these activities were relevant to the initial reason for the stop or to ensure officer safety. See United States v. Braddy, 11 F.4th 1298, 1310 (11th Cir. 2021) (recognizing ordinary inquiries incident to a traffic stop typically include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance") (quotation marks and citation omitted); Purcell, 236 F.3d at 1278 ("The request for criminal histories as part of a routine computer check is justified for officer safety.").

Officer Bernard also asked Head for permission to search the vehicle, requested a K9 unit, and asked Head and Borden to exit the vehicle for a drug sniff. These activities arguably did not relate to the stop for an inoperable taillight. However, Head neither alleges that Officer Bernard issued the citation before asking to search the vehicle, nor that Officer Bernard should have reasonably completed the traffic stop before making that inquiry. Rather, Head asserts that K9 Officer Stevenson arrived "[w]hile [Officer Bernard] was conducting [the] traffic stop investigation." AC at 6; Doc. 17-1 at 8. In addition, once Borden voluntarily exited the vehicle and the clear glass pipe with burnt drug residue fell from her clothes, Officer Bernard developed sufficient

reasonable suspicion of other criminal activity, such as use or possession of drug paraphernalia in violation of Florida Statutes section 893.147(1) to prolong the stop. Doc. 17-1 at 8. As such, Head has failed to plead facts sufficient to nudge his conclusory claim of a prolonged stop or unlawful seizure "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, Defendants' Motion is due to be granted on this basis.

## B. Search

Defendants' argument regarding probable cause to support the search of Head's vehicle lacks specificity. See Motion at 7-15. Nevertheless, they assert that "the face of the Amended Complaint demonstrates each and every necessary element establishing . . . probable cause for [] the warrantless search of the vehicle." Id. at 14-15. Later in the Motion, to support their qualified immunity argument, Defendants contend the automobile exception and search incident to arrest provide justifications for the search. Id. at 17-22. Head argues that neither exception applies to this case. Response at 24-26.

The Eleventh Circuit has instructed that "[t]he basic premise of search and seizure doctrine is that searches undertaken without a warrant issued upon probable cause are 'per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions.'"

18

United States v. Alexander, 835 F.2d 1406, 1408 (11th Cir. 1988) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One of those "well-established exceptions" is the automobile exception. Id. at 1408-09. Under this exception, "'police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.'" United States v. Delva, 922 F.3d 1228, 1243 (11th Cir. 2019) (quoting California v. Acevedo, 500 U.S. 565, 580 (1991)) (remaining citation omitted); see also United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007). For the automobile exception to apply, "'(1) the automobile must be readily mobile, and (2) there must be probable cause to believe that it contains contraband or evidence of a crime.'" Delva, 922 F.3d at 1243 (quoting United States v. Lanzon, 639 F.3d 1293, 1299-300 (11th Cir. 2011)). Probable cause for the warrantless search of an automobile exists "when there is a fair probability that contraband or evidence of a crime will be found in the vehicle." Id. (quotations and citation omitted); see also United States v. Tamari, 454 F.3d 1259, 1261-62 (11th Cir. 2006). And a vehicle is "readily mobile" if it is "operational." Tamari, 454 F.3d at 1261.

Based on Head's own allegations as pled in the AC, probable cause supported the search without a warrant of Head's vehicle. Officer Bernard conducted a criminal history check of Borden, which revealed her "history of

drug arrest." AC at 6; Doc. 17-1 at 8. And, when Borden stepped out of the vehicle, "a clear glass pipe with burnt drug residue fell out of [her] clothing." Doc. 17-1 at 4, 8. At that point, Officer Bernard had sufficient probable cause based on the presence of drug paraphernalia and Borden's history of drug arrest to suspect that the vehicle contained additional contraband. Further, the vehicle was operational as Officer Bernard had recently pulled the vehicle over for an inoperable taillight. AC at 5-6; Doc. 17-1 at 8. Head does not plead any facts to the contrary in his AC. As such, the automobile exception applies, and the Motion is due to be granted on this basis. The Court therefore need not evaluate the lawfulness of the search as one incident to arrest.

## C. Arrest

In their Motion, Defendants argue that Officer Bernard had probable cause to arrest Head for possession of a controlled substance when he found a "white rock substance" in Head's wallet. Motion at 13. They contend that to the extent Head attempts to allege no probable cause existed for the arrest because Officer Bernard discovered the substance during an illegal search, his argument fails as a matter of law because the exclusionary rule does not apply in civil suits against police officers. Id. at 13-14. In response, Head again

contends that Officer Bernard did not have probable cause to arrest him. Response at 27.

A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020) (citing Wallace v. Kato, 549 U.S. 384, 388-89 (2007)). If an officer had probable cause for an arrest, the arrestee may not later sue the officer under a theory of false arrest. Brown, 608 F.3d at 734; see also Wood, 323 F.3d at 878 ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.").

Here, based on the facts that Head alleges in the AC, Officer Bernard had probable cause to arrest Head for possession of cocaine in violation of section 893.13(6)(a). As he states in the AC, during Officer Bernard's search of the vehicle, he discovered a white rock substance in Head's brown wallet. Doc. 17-1 at 4, 8. Notably, Officer Bernard observed Head remove his license from that same wallet at the beginning of the traffic stop. AC at 6; Doc. 17-1 at 8. The substance field tested positive for crack cocaine. Doc. 17-1 at 4, 8. As such, probable cause existed to arrest Head for possession of cocaine. The fact that the State subsequently entered a nolle prosequi "is of no consequence in determining the validity of the arrest itself." Marx v. Gumbinner, 905 F.2d

21

1503, 1507 (11th Cir. 1990). Because the Court finds that Head has not stated a plausible false arrest claim, his claim for false imprisonment also fails. See Case v. Eslinger, 555 F.3d 1317, 1330 (11th Cir. 2009) (finding that plaintiff's claim for false imprisonment failed where defendant officer had probable cause to arrest him). Therefore, Defendants' Motion is due to be granted.[9]

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.      Defendants C.D. Bernard, J. Smith, S. Stevenson, C.D. Dinkins, and J.J. Lloyd's Motion to Dismiss (Doc. 19) is **GRANTED**.

2.      Plaintiff Deriel Head's Amended Complaint (Doc. 17) is **DISMISSED WITH PREJUDICE**.

3.       The Clerk shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of July, 2023.

MARCIA MORALES HOWARD
United States District Judge

---

[9] Because the claims against Defendants are due to be dismissed on this basis, the Court need not address the Defendants' remaining arguments.

Jax-9 7/20
c:      Deriel Head, #302012
        Counsel of record

23